THE STATE OF WYOMING,
*Plaintiff and Respondent,*

vs.

WILLIE MAE BENTINE,
*Defendant and Appellant.*

(No. 2422; July 12th, 1949; 208 Pac. (2d) 291).

For the defendant and appellant the cause was submitted upon the brief and also oral argument of H. S. Harnsberger of Lander, Wyoming.

For the plaintiff and respondent the cause was submitted upon the brief of Honorable Norman B. Gray, Attorney General; John S. Miller, Deputy Attorney General and Marion R. Smyser, Assistant Attorney General, all of Cheyenne, Wyoming, and oral argument by Mr. Miller.

224

## OPINION

BLUME, Justice.

Subsequent to a preliminary hearing, the county and prosecuting attorney of Sweetwater County filed an information against the defendant, Willie Mae Bentine, charging that the defendant on September 27, 1947, "did unlawfully, wilfully, feloniously, maliciously, and in a rude, insolent and angry manner, touch, strike, and wound one Fred Glaze, a human being, with intent then, there and thereby to unlawfully, wilfully, feloniously, purposely and with premeditated malice, kill and murder the said Fred Glaze, contrary to the form of the statute in such case made and provided,

and against the peace and dignity of the State of Wyoming." The defendant pleaded not guilty. Trial of the case was commenced on January 8, 1948, and was concluded on January 9, 1948, at which time the jury returned a verdict against the defendant finding her guilty of assault and battery with intent to commit murder in the second degree as charged in the information. Judgment was entered and sentence imposed upon defendant on January 9, 1948. She thereupon brought this case to this court by direct appeal.

The crime charged herein was committed in a building in Rock Springs, Wyoming, the west part of which served the defendant as living quarters, but in the main part of which she conducted what she called a barbecue stand selling barbecued ribs, chicken, hamburger, ham and eggs, bacon and eggs, chili and beer. She employed, it seems, several girls, the character of some of whom came incidentally in question in the examination of Fred Glaze, the prosecuting witness. Error is assigned that he was permitted to testify to an independent crime, namely, that the defendant operated a house of prostitution. On cross-examination of this witness by counsel for defendant, he was asked whether or not he had had any previous trouble at the place of the defendant. He answered that there wasn't any trouble but that he was going with a girl working for defendant, and that she was a "hustler," although he did not know that at the time, and that defendant didn't want the girl to go out with him. So on re-examination of the prosecuting witness, he was again asked in reference to this trouble. The record in that connection is as follows:

"Q. Mr. Glaze, what was that trouble that you had down at the defendant's home?

A. Well, it was about the girl.

Q. Who was the girl?

A. The girl's name is Henrietta Peters.

Q. What was she doing?

A. A hustling girl.

Q. Where?

A. At Willie Mae's place.

Q. Does this defendant operate a house of prostitution?

MR. STANTON: We object to that as immaterial.

THE WITNESS: Well I don't know what you would call it. What do you mean by that?

Q. Does she have girls there for special use?

A. That's right, she does.

Q. And this trouble that you had was over one of those girls that was working for her?

A. Yes, it was about a girl."

It is quite clear from this that the matter of defendant having "hustling" girls was brought out by defendant's counsel on cross-examination and this matter was permitted to be more fully developed in redirect examination without any objection whatever. The court was not given an opportunity to rule on the one objection that was made, counsel for the defendant did not insist upon the court's ruling in that connection, no exception was taken, and the question to which an objection was made was left substantially unanswered. See in that connection 24 C. J. S. 932-934. The direct question to which objection was made added little, if anything, to the testimony which was given on the subject without any objection, and it is held that where an independent crime is shown by evidence without objection, other evidence showing that fact cannot be held to be prejudicial. 24 C. J. S. 991, 992. Apparently the matter was not regarded of very much importance and we cannot, under the circumstances, reverse the case on

the ground of the error here assigned, although we do not wish to intimate that we approve of the conduct of the prosecuting attorney in that connection.

The defendant offered Instruction No. A which, among other things, stated: "The assault must have been coupled with a present ability to commit a violent injury on the person of the said Fred Glaze." The court refused this instruction and counsel says that it was error not to instruct the jury that her attempt of violence on Glaze should have been coupled with a present ability to do so. Counsel refer to 6 C. J. S. 931, where it is stated: "Generally speaking * * *, there must be an attempt or offer to use the weapon, coupled with a present ability to do so." That rule is, of course, a proper rule in some cases. In the instant case, the defendant had a revolver which was loaded. She shot twice, one of the shots injuring the prosecuting witness. That she had the ability to so injure the prosecuting witness is so patent that we are unable to see how the jury could possibly have been enlightened in any way if the court had given an instruction on the subject.

NEWLY DISCOVERED EVIDENCE.

The verdict of the jury convicting the defendant herein was returned on January 9, 1948. On January 14, 1948, the defendant filed a notice of appeal as contemplated by the statutes for direct appeal. On March 12, 1948, the defendant filed what is called a motion for a new trial based upon newly discovered evidence which the defendant could not have discovered with reasonable diligence previously. The motion was accompanied by the transcribed evidence given on the preliminary hearing of the defendant and by affidavits of Esau Palmer and Tom Collins. The motion was overruled on March 13, 1948, and that was assigned as error. The motion, together with the evidence at

the preliminary hearing of defendant, and the affidavits above mentioned are included in the record on appeal. The state says that the motion for a new trial was not filed in time. Counsel for appellants herein, however, contends that the notice of appeal should be regarded as a motion for a new trial, and that the motion filed herein on account of newly discovered evidence should be regarded as a supplemental motion within the meaning of Section 3-3403, Wyo. Comp. St. 1945, which provides that some matters including those relating to newly discovered evidence may be presented by supplemental motion and heard by the court if filed before the court passes on the motion for a new trial. But it is stretching the meaning of language too far to say that a notice of appeal can mean the same thing as a motion for a new trial. Of course cases arise not infrequently in which matters affecting a judgment such as new evidence or improper conduct of a jury are not discovered until after the trial in a case or after entry of judgment. There is no direct provision in the legislation concerning direct appeals covering such contingencies, but it has apparently been considered from the beginning that such contingencies were covered and that the system providing for direct appeals was complete without any gap therein. The case of Mitter vs. Black Diamond Coal Company, 27 Wyo. 72, 191 Pac. 1069, 193 Pac. 520, was decided in 1920, at a time when the purpose and intent of the statutes for direct appeal were still clear in the minds of the members of the bar and of the courts. The late Justice Potter, in discussing in that case motions for a new trial and provisions relating to specifications of error in connection with records on appeal, stated among other things (27 Wyo. 85) : "specifications of error are, in effect, substituted for a motion for a new trial, for the purpose of first presenting to the trial court the questions to be heard on appeal, and every

necessity for a motion for new trial for the purpose of the appeal is obviated." That seems to mean that every point that may be raised by a motion for a new trial, properly so called, may first be raised in specifications of error, which of course presuppose the filing of a record on appeal in which such matters are contained. The specific point here involved was not involved in the foregoing case, and, strange as it may seem, did not arise until we had before us the case of State vs. Goettina, 61 Wyo. 420, 470, 158 Pac. 2d 865. In that case judgment was entered on February 1, 1944. No motion for a new trial was filed. But affidavits relating to the misconduct of the jury were filed as late as March 30, 1944, and were embodied in the record on appeal. In his assignments of error, appellant alleged that the judgment should be set aside and a new trial should be granted because of the misconduct of the jury as shown by the affidavits. The state made no contention that these affidavits were not properly before this court for review. It apparently conceded' the procedure pursued in that case to be proper, objecting only to affidavits which were filed subsequent to the filing of the record on appeal. We considered the affidavits in the record on the merits, sustaining, however, the contention of the state that affidavits filed subsequent to the filing of the record on appeal could not be considered. Following the precedent set in that case, we think that we should consider the matter of newly discovered evidence in the case at bar as properly in the record before us for review. Section 3-3801, Wyo. Comp. St. 1945, provides: "A district court may vacate or modify its own judgment or order, after the term at which the same was made: (1) By granting a new trial when the grounds for a new trial could not with reasonable diligence have been discovered before, but are discovered after the original motion for a new trial has been passed upon by the district court." That

shows how liberal our statutes are in the desire to give a party relief in cases similar to that at bar, so that we see no good reason for construing our statutes providing for direct appeal more narrowly than was apparently done in the statement in Mitter vs. Black Diamond Coal Company above quoted.

While the details in connection with the shooting in the case at bar are in dispute, the preliminary facts are, we believe, substantially as follows: The prosecuting witness, Fred Glaze, arrived at defendant's place about 11 o'clock on the evening of September 27, 1947. He ordered four bottles of beer and was handed two bottles by the waitress, Lola Carter. He told her to put the cost "on the books," but was asked by the defendant to pay for the beer then and there and that she would not extend any credit to him. A controversy arose between Glaze and defendant concerning the payment for the beer, the details of which are in dispute except that it seems quite certain that Glaze was abusive, used unpardonably vile and obscene language, and that defendant went into her bedroom which was a few feet west of where Glaze was standing, obtained a gun, came back and shot twice—one of the shots hitting Glaze in the shoulder, as a result of which he was confined in the hospital for two weeks, had the bullet extracted, with his arm, however, left with very little function. The record seems to indicate that the jury were justified in finding that defendant shot Glaze because he refused or failed to pay for the beer immediately, goaded on perhaps in doing so by reason of the filthy language used by Glaze. Defendant claimed that she shot the first time merely to scare Glaze; that she shot the second time because, having a rupture, she was afraid that Glaze following her "might push that rupture in me and kill me" and, "because he was coming on me and trying to get something out with his right hand—a gun, I really thought he had a gun."

The jury discredited her claim of self-defense. Glaze had no gun. He appears to have had merely a bottle of beer in one of his hands. There is no testimony in the record aside from that of defendant that he even as much as raised a hand. The affidavits of Esau Palmer and Tom Collins above mentioned were evidently filed herein for the purpose of strengthening the claim of self-defense. The affidavit of the former reads in part as follows: "Fred Glaze and I went to Willa Mae Bentine's place about 10.30 P.M., on September 27th, 1947; were ordered some beer; Glaze did not pay for the beer; Glaze told Lola Carter who served us, 'Just put this beer on the book'; Lola Carter said 'Billie' meaning Willa Mae Bentine, said she wasn't charging nothing that night; Glaze went on into Billie's bedroom and wanted to know why he couldn't get any beer on credit; Billie said 'I ain't doing any business like that tonight'; Glaze got mad; I tried to stop any trouble and tried to get Glaze to pay Billie; I tried to give Glaze the money to pay Billie but Glaze would not take the money; Glaze just kept following Billie back into the bedroom; Glaze kept going toward Billie and she kept backing and then she shot up into the ceiling; Glaze kept going toward Billie and I was trying to stop him all the time but he kept going toward Billie until he was about five feet from her when Billie shot him; I then with Collins took Glaze to the Hospital; Glaze did not fall when he was shot." The affidavit of Tom Collins is similar except that he attempted to make it somewhat stronger, stating in part: "Palmer was trying to stop Glaze and to get Glaze to leave and I was too; Glaze broke away from us and started back toward Billie who was still in the Bedroom but near the door; Billie told Glaze she would forget the beer if he would get out and leave; instead Glaze kept after her and she fired a shot into the ceiling and said that was to warn him that she meant what she said and for Glaze to

leave; Billie was backing into the bedroom and Glaze was after her when another shot was fired; Glaze did not fall down; he was quite close to Billie when the second shot was fired and Billie was still backing away. * * * Glaze was awful mad and making trouble and was forcing Billie and she was scared of Glaze."

The affidavits above mentioned are, to a large extent at least, merely corroborative of testimony in the case. Lola Carter, the girl who handed the beer to Glaze, testified that Glaze was following the defendant as she backed into her bedroom; that defendant backed away to a chest standing between the bed in the room and the door to the bedroom; that she saw defendant sitting down on the chest and that Glaze was standing over her. So the witness, Secnoise Johnston, testified that Glaze went into the bedroom apparently following the defendant.

Neither Palmer nor Collins were witnesses in the trial of the case at bar, although the latter was subpoenaed, but both were witnesses in the preliminary hearing of the defendant. They were, at that time, examined at length both on behalf of the state and the defendant. Their testimony was taken down in shorthand. The notes were extended and were made a part of the motion for a new trial and of the record on appeal. Palmer at that time testified in part as follows:

"Q. What, if anything, unusual took place at that time?

A. I was in the house, and he walked in and ordered some beer.

Q. You mean Glaze?

A. Fred Glaze. And he said to charge it, and she said she weren't doing any credit business tonight.

Q. Who said that?

A. That is what Willie Mae said, 'We're not doing any credit business tonight.'

Q. Go on.

A. Then about that time I walked out. I was talking to some of the fellows. I didn't see any shooting.

Q. Where were you at the time of the shooting?

A. I went outside. I was on the outside.

Q. Outside of the building?

A. Sure.

Q. Did you leave before the shooting?

A. Yes, I left——went out. I didn't see the shooting. I was on the outside. I heard some shots fired, but I don't know who fired them.

Q. You were on the outside of the house before you heard the shots?

A. Yes.

Q. How many shots were fired?

A. I wouldn't know. I heard one.

Q. Was he (Glaze) in a quarrelsome mood?

A. Maybe. The only thing that I heard she said she wasn't having any credit business that night.

Q. He got pretty angry when she refused to give him credit?

A. Well, I don't know. I couldn't tell."

It is quite clear that the statements made by Palmer in his affidavit are wholly irreconcilable with his testimony given in the preliminary hearing of the defendant. Without setting out the testimony given by Tom Collins in the preliminary hearing, it is quite clear that his testimony too and his statments in his affidavit

are irreconcilable. In Thompson vs. State, 41 Wyo. 72, 283 Pac. 151, we discussed the effect of an affidavit made by a recanting witness and held that we should ordinarily be bound by the ruling of the trial judge in refusing to believe the affidavit of such recanting witness. We also considered the subject of Espy vs. State, 54 Wyo. 291, 92 Pac. 2d 549. In these cases the recanting witness had testified in the trial of the case while in the case at bar Palmer and Collins did not testify. Hence these cases and the case at bar are not parallel, insofar as effect on the verdict is concerned. Nevertheless, in view of the fact that both Palmer and Collins had testified in the preliminary hearing as above mentioned, it is quite clear that in other respects they are in substantially the same position as recanting witnesses, and it was within the province of the trial judge to determine whether it was likely that they testified correctly at the preliminary hearing or whether their statements in their affidavits were correct. It is said in 23 C. J. S. 1233-1234 as follows: "Recantation by witness called on behalf of the prosecution does not necessarily entitle accused to a new trial. The question whether a new trial shall be granted on this ground depends on all the circumstances of the case, including the testimony of the witnesses submitted on the motion for the new trial, and its determination is left to the sound discretion of the trial court free from interference except for abuse of such discretion. Moreover, recanting testimony is exceedingly unreliable, and it is the duty of the court to deny a new trial where it is not satisfied that such testimony is true." In State vs. Zeilinger, 147 Kan. 707, 78 Pac. 2d 845, the court stated: "It is only in extraordinary and unusual cases that the court should grant a new trial because of the recanting testimony of the complaining witness on the motion for a new trial." It is difficult to see how, in face of these authorities, we can say that the trial

court abused its discretion in refusing to believe the statements made by Palmer and Collins in their affidavits. Counsel for appellant argues that the State's case against defendant was weak and that, hence, a special reason exists in this case, why in view of the recanting testimony, a new trial should be granted. But after reading and weighing the testimony in the record, we are not able to say that counsel's contention is correct. It may be (and the writer hereof believes) that in view of the unpardonably obscene and abusive language used by the prosecuting witness heretofore mentioned, and in view of the possible or probable effect thereof on the defendant, the verdict of the jury was somewhat harsh. But the trial judge was in much better position than is this court to determine as to whether or not that was true.

We do not find any reversible error in the record and the judgment herein must according be affirmed. It is so ordered.

RINER, C. J. and KIMBALL, J., concur.